UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAUN NICHOLAS MOORE,

      Plaintiff,

v.

JASON VANDYKEN, *et al.*,

      Defendants.
_____/

Case No. 1:23-cv-140

Hon. ROBERT J. JONKER

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Shaun Nicholas Moore ("Moore") is a prisoner in the custody of the Michigan Department of Corrections (MDOC). While Moore is currently a state prisoner, he filed this lawsuit regarding incidents which occurred at the St. Joseph County Jail ("Jail"). Officer Jason VanDyken is the only defendant remaining in the lawsuit. This matter is now before the Court on defendant VanDyken's motion for summary judgment (ECF No. 25).[1] Plaintiff did not oppose the motion.

      **I.**      **Complaint**

The Court summarized plaintiff's claims as follows.

Plaintiff sues Officers Jason VanDyken, Kyle Rice, and James Mahoney, as well as Kitty Buchner and Brad Baulk.

Plaintiff alleges that on May 7, 2022, he requested to speak to Sergeant Jim Hasebrook (not a party) about "disrespect coming from [Defendant] VanDyken." (ECF No. 1, PageID.4.) Plaintiff contends that on that date, he and Defendant VanDyken "exchanged words that led to utter disrespect." (*Id*.) Plaintiff "could no longer contain his verbal aggression" and hit the emergency button, asking

---

[1] VanDyken's previous motion for summary judgment was denied without prejudice. *See* Order (ECF No. 23).

1

> Defendant Rice "to possib[ly] get a hold of the situation as well as a [sergeant] so that things wouldn't progress." (*Id.*) Plaintiff's request was ignored. (*Id.*)
>
> Later that day, around dinner, Defendant VanDyken "made [gestures] of disrespect[,] saying things [to Plaintiff] like [he is] all talk and that [he is] a p***y." (*Id.*, PageID.4-5.) Plaintiff started yelling back using "slurs of disrespect." (*Id.*, PageID.5.) Plaintiff got his meal tray through the slot and then noticed it was not a full serving. (*Id.*) Plaintiff contends that another inmate's tray was also short. (*Id.*) Plaintiff's tray was not corrected; the other inmate's tray was corrected. (*Id.*) Plaintiff asked to speak to a sergeant. (*Id.*) Defendant VanDyken told Plaintiff to remove his tray from the slot, and Plaintiff did so. (*Id.*) Defendant VanDyken then slammed the slot door closed, "causing it to jam [Plaintiff's] broken finger." (*Id.*)
>
> Plaintiff contends that he wants to pursue assault and strangulation charges against Defendant VanDyken. (*Id.*, PageID.6.) Based on the foregoing, the Court construes Plaintiff's complaint to also assert constitutional claims premised upon verbal harassment, the denial of a full serving at dinner time, and excessive force. Plaintiff seeks damages as well as an investigation into the assault. (*Id.*, PageID.7.) . . . .
>
> The Court has construed Plaintiff's complaint to assert constitutional claims against Defendant VanDyken premised upon verbal harassment, the denial of a full meal, and excessive force. Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citations omitted). The application of the proper constitutional right depends on the nature of Plaintiff's detention: the Eighth Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id.* (citations omitted). Because Plaintiff does not specify the nature of his custody as of May 7, 2022 (the date of the incident), the Court considers Plaintiff's claims under both the Eighth and Fourteenth Amendment standards.

Opinion (ECF No. 8, PageID.28-29, 33). Moore seeks $1,000,000.00 and $2,000,000.00 in damages. Compl. (ECF No. 1, PageID.7).

The Court dismissed all claims except the excessive force claim against Officer VanDyken, which was "premised upon Plaintiff's allegation that Defendant VanDyken slammed the cell's food slot on his broken finger." Opinion at PageID.39. In addressing this claim, the Court stated in pertinent part:

2

> It does not appear that Plaintiff was an arrestee at the time of the events alleged in his complaint. Moreover, as noted above, the complaint is devoid of facts that would permit the Court to conclusively determine whether Plaintiff was a convicted prisoner or pretrial detainee on May 7, 2022, when the alleged use of excessive force occurred. In any event, regardless of whether the Eighth or Fourteenth Amendment applies, Plaintiff has set forth a plausible excessive force claim against Defendant VanDyken.

*Id. See also,* PageID.40 ("Plaintiff's constitutional claim for the use of excessive force against Defendant VanDyken remains in the case.").

### II.  Motion for summary judgment

### A.

**Legal standard**

Defendant VanDyken seeks summary judgment on plaintiff's claims pursuant to Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of

>production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, Moore did not file a response in opposition to the motion for summary judgment. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

    **B.**    **Moore's Fourteenth Amendment claim**

Moore seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

In his motion for summary judgment, defendant VanDyken points out that at the time of the alleged incident, Moore was a pre-trial detainee. *See* Defendant's Brief (ECF No. 26, PageID.158). "For pretrial detainees, the protection against the use of excessive force is afforded by the Fourteenth Amendment's Due Process Clause." Opinion at PageID.39 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 392-93 (2015)). Accordingly, the Court will review this claim under the Fourteenth Amendment.[2]

In 2015, the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from excessive force claims brought by convicted prisoners under the Eighth Amendment. *See Kingsley*, 576 U.S. 389. In *Kingsley*, the Court held that, for purposes of an excessive force claim brought by a pretrial detainee, a "detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396-97. As the Supreme Court explained,

> [O]bjective reasonableness turns on the "facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. *See ibid*. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
>
> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *See, e.g., Graham, supra*, at 396, 109 S.Ct. 1865. We do not consider this list to be exclusive. We mention these factors

---

[2] The Court notes that the booking record (ECF No. 20-2) is difficult to decipher. However, Moore does not contest that he was a pre-trial detainee at the time of the incident.

only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

*Id.* at 397.

As discussed, the Court construed Moore's excessive force claim as premised upon his allegation that defendant VanDyken "slammed the cell's food slot on his broken finger." Opinion at PageID.39.[3]  However, at his deposition, Moore clarified that his finger was not slammed in the food slot door as he alleged in the amended complaint:

> Q. So explain to me how it is that your finger supposedly got closed in the door?
>
> A. Well, not closed into the door. Now, mind you, my finger is already fractured, wrapped all the way up, all right. So while I'm holding the tray, I'm holding the tray showing him with my right hand and he pushes the door, he pushes the door, he pushes the tray in and it hurts my finger automatically, and I put the tray down.
>
> Q. So, your finger would have been beyond where the cell ends and sticking outside of the door?
>
> A. No, no ma'am. I'm inside of the cell, so you can't stick your finger outside of the slot. All you got to do is just set your tray right there and slide it out. All I was doing was showing him that I didn't have the piece of meat, so it didn't go all the way outside of the door. It just showed him enough to where the slot where the meat goes in, you can see that I didn't get my portion. You know what I'm saying?
>
> Q. I get that, but I'm not understanding how your finger was supposedly injured?
>
> A. Because I'm holding the tray. <u>You're thinking that my finger got slammed in the door. No. I'm holding my tray. Him pushing the tray back into the door, it just hurt my finger because it's in a sling and everything and that shit hurt, excuse my language it hurts.</u> You know what I mean? It sent immediate pain all the way throughout my hand, and then I put the tray down, you know what I'm saying?

---

[3] At his deposition, Moore testified that prior to his incarceration at the Jail, he was treated for a broken or fractured finger at a medical facility. *See* Moore Dep. (ECF No. 20-1, PageID.87-88). Counsel's question, "How did your finger get broken?", resulted in the following colloquy:

> A. My finger was actually – I have gout.
> Q. Does that cause your finger to be broken?
> A. Yes, it caused my finger to be broken.

*Id.* at PageID.88.

> Q. So the tray door didn't actually hit your finger, right?
>
> A. Yeah. You said what?
>
> Q. Did the tray door actually hit your finger?
>
> A. No, the tray door hit the tray and then it hit my finger.
>
> Q. The tray door hit the tray and then the tray hit your finger and then that caused you pain?
>
> A. Yes, the reaction of all of it, yes, it hit my finger. You understand what I'm saying now?
>
> Q. Yes, I do. And what evidence or what causes you to believe Vandyken did that on purpose?
>
> A. Because I was being polite and I was being all the way sincere and one hundred [sic] about it.  He didn't have to do it like that.  He didn't have to go about it like that.  I don't know what the vendetta is against me and him, but he didn't have to do what he did, man.  I don't know why, why, did he what he did, I just know he did it, man, and it just sent excruciating pain through my hand and I reacted by kicking the door.
>
> Q. Okay

Moore Dep. (ECF No. 20-1, PageID.104) (emphasis added).

Based on Moore's testimony, Officer VanDyken did not "slam[] the slot door closed, 'causing it to jam [Plaintiff's] broken finger'" as alleged in the complaint.  At most, Moore admits that VanDyken pushed the door, which pushed the tray, which caused the tray to hit Moore's finger.  This series of events appears consistent with VanDyken's affidavit, which states that he did not knowingly or purposefully injure Moore's finger when he closed the food slot:

> 3. That on May 7, 2022, during dinner pass, Plaintiff initially took his tray without issue.
>
> 4. That another inmate complained he was missing a slice of meat from his tray, which was revealed when the inmate worker used his gloved hand to remove a slice of cheese.

> 5. That after this interaction, Plaintiff, who had been seated with his tray, began loudly asserting he was now missing a slice of meat.
>
> 6. That Plaintiff placed his tray on the food slot door demanding a new meal.
>
> 7. That I gave verbal directions to Plaintiff to remove his tray, which he appeared to comply with.
>
> 8. That I then shut the food slot door and walked away, to continue dinner pass.
>
> 9. That I did not knowingly or purposefully injure Plaintiff's finger when I closed the food slot door.
>
> 10. That my actions were a good faith attempt at maintaining discipline during mealtime.
>
> 11. That I was concerned Plaintiff may throw his tray, or other items, outside of the cell, which would cause a disruption of internal order and compromise institutional security.
>
> 12. That closing the food slot door and disengaging from the interaction was intended to deescalate the situation and to limit the need for additional force.

VanDyken Aff. (ECF No. 20-4, PageID.129-130).

In summary, there was no evidence that defendant VanDyken slammed the food slot door closed "causing it to jam [Plaintiff's] broken finger" as alleged in the amended complaint. Furthermore, based on these facts, no reasonable jury would find that defendant VanDyken purposely or knowingly used force against Moore that was objectively unreasonable. Here, defendant VanDyken shut the food slot door to resolve a potential mealtime incident at the Jail, to de-escalate the situation, and to limit the amount of force used. For all of these reasons, defendant VanDyken's motion for summary judgment should be granted.[4]

---

[4] The Court notes that defendant VanDyken also seeks summary judgment on the affirmative defense of qualified immunity. Because there was no constitutional violation, it is unnecessary to address the arguments regarding this affirmative defense.

### III. Recommendation

Accordingly, I respectfully recommend that defendant VanDyken's motion for summary judgment (ECF No. 25) be **GRANTED** and that this case be terminated.

Dated: February 11, 2025         /s/ Ray Kent
                                 RAY KENT
                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).